Of course, we'll be in a brief recess for a panel of change. Huh? Huh? Good. How are you? Good. Outside? Outside? Yeah. Huh huh. Certainly. Okay. Okay. Okay. Okay. Yeah. My name is Cindy Johnson. I'm here today representing James Torrance and William Torrance, who were citation respondents, third parties, in proceedings brought by the first mayor of Fayette in efforts to collect a judgment against William McHenry. Usually third-party citation respondents are mere stakeholders in the assets that belong to the judgment debtor. But sometimes, as in this case, they're more. They're lien holders against those assets. Sections 214.02g and 12.810 of the Illinois Code of Civil Procedure direct the court to give notice to any party claiming the right in assets that are subject to a citation. The purpose of this is so the party who claims these rights can file an adverse claim as against the assets and have a trial on that adverse claim, have it heard, have evidence presented. In fact, the trial of an adverse claim is mandatory. 214.02g says that the court shall, quote, permit or require claimant to appear and maintain his or her rights, unquote. And that said right shall, quote, be asserted and determined pursuant to law related to garnishment proceedings, unquote. Garnishment proceedings under 12.810 set up the adverse claim and trial by the faculty process. The Torrance's claim is to originate here. The judgment debtor, Mr. McHenry, has contracted with them to move some personal property of his, including what we've called the Kiddieland train below, to the Torrance's premises for storage in June 2012. The Kiddieland train was a train from the Kiddieland amusement park. The Torrance's had possession, because we had removed their portions of it, an engine, some cars, some rail tracks, and some signals. Not the entire train, a portion of it. The bank knew about the storage room, by the way, since January 14, 2015. The judgment debtor told them about it. There is an order of that date where the bank put into the order that there was a lien against this property. The judgment debtor advised them of that. They may not have known at that time that it was the Torrance's who had the lien, but they did know about the lien. The bank did hear more about the storage room about a year later, December 2, 2015, when they took the citation exam of my client, James Torrance. At least by that date, maybe they knew before, maybe that's why they took the citation exam, but at least by that date, if not earlier, the bank knew the Torrance's were claiming a lien with the Kiddieland train, and it was they who were claiming the lien. Once the bank knew that the Torrance's had a lien, they did not promptly advise the post-judgment court about the lien or who had that lien. The bank first notified the judge of this when the bank filed a motion for turnover of the Kiddieland train almost four years after they first learned there was a lien, and just about three years after they had taken Jim Torrance's citation examination, his testimony under oath about the claim on the lien. But not only did the bank not ask the court to set a date for the Torrance's to file their adverse claim when they notified the court of it, the bank resisted the rights of the Torrance's to pursue their lien and have the claim deferred. The Torrance's, in their response brief to the turnover motion, urged the court that a ruling on the turnover motion was premature, and that was because the Torrance's had not been given an opportunity to present their adverse claim for storage, and no hearing had been set on their claim for storage. In other words, there had been no trial of their property. The Torrance's did not say the bank would never get a turnover, it just said the court was acting prematurely to grant a turnover at this time. Do you think that they had an affirmative duty to file their claim and to ask for a hearing independent of what the bank or, you know, what the creditor did? I think that in the intervening time, the answer has to be no. It has to be no, because it would make no sense for a third-party respondent who happens to know there's a lien to start setting up affirmative defenses and running in and saying, I have a claim. If the creditor's not going to ask for turnover, that's a waste of judicial resources in the parties' funds. In this instance, the bank had an appraisal of the train, and remember, it's a portion, so it's a unique asset, maybe with not a big market, but they had an appraisal of a fairly small amount of money, actually. And there was no reason to think that necessarily the bank was going to then finally ask for turnover of this asset. They were holding many other of McHenry's assets, could have been any number of those assets. Or there could have been none, so I don't think so. And I think that by telling the court, you are granting this to be granted prematurely, you should allow us to present our claim, and then the court saying, no, I'm going to grant the turnover anyway, without saying, okay, I'll enter and continue this, let's set a date for your claim, I think that's a nod to the request. The banks replied, actually, interestingly enough, that there was just what you're trying to address, which there had been plenty of time for the Torrences to do this. They could have asserted it at any time. And the second issue, though, that the bank raised in their reply was that there was no evidentiary basis for the Torrences' claim. The bank insisted the court could simply ignore the child right property process and the Evers claim process and just grant the bank's request for turnover. There's three problems with this argument by the bank. First, the Torrences were required to assert their evidence in response to a brief requested turnover. The court had been made aware of the claim and was required to send an entry hearing on the Torrences' claim to set the time for them to file their claim in hearing. The second, again, is the practical matter I just addressed, that you're not going to set up your claim in these intervening years if you have no idea if anyone's going to ask for turnover of assets. The third problem, actually, with the bank's argument is actually the second round of appeal here. Well, if you have a lien, and the lien they claim is, what, $25,000? Approximately at that time. Yeah, and you're just going to sit there and continue to store it without trying to take possession of the property and satisfaction of the lien? Well, you have a third-party entity here, who's the judgment debtor, whose property it is. The judgment debtor wants his property continued to be stored or what his estate does when he finally passes. He does pass in this case. So the storage person is helpless? The storage person is not helpless. The storage person just doesn't have a duty to go ahead and assert their lien before someone's asking to take the property back. If the owner was asking to take the property back, they wouldn't have to assert their lien at any time prior to the owner asking for it back. They could. So when do they have a duty? I think they have a duty to ask the court to set a hearing in their response brief when the turnover motion was finally filed. And I think that they did that by saying, Your Honor, you're acting prematurely if you grant this motion. You need to stay it and then have a hearing. This third point that I was just discussing before Your Honor's question was that the bank, by saying that there was no evidentiary basis for the torrents to actually have their claim, put additional evidence in their reply brief, which is generally inappropriate. But by setting this up and asking the court to say there is no evidentiary basis for this lien, what they did is they basically now took away the evidentiary hearing standard and made this more like a summary judgment. And although on an evidentiary hearing on an adverse claim, it is the adverse claimant who has the burden of proving the adverse claim, on a summary judgment motion on a hearing without testimony for the court on the papers, it's the movement who has the initial burden of production and the actual burden of proof, and that's the court versus city, county, 323 Elect Third 917 at 933. First district case of 2001. The torrents pointed out to the post-judgment court that when the bank did this, they said please deny their lien claim. They have no basis for one. You can just ignore it. No evidentiary basis. The bank failed to meet their burden necessary to prevail on this summary judgment type request. By setting this up, instead of saying you don't have to have a hearing, they're saying they don't have a claim. They now created a burden to themselves, and that burden on summary judgment is the highest moral line one can have. It's the burden of as a matter of law. Even a higher burden would be not a reasonable doubt. After briefing and argument, the court below did not follow the mandatory requirements of the adverse claimant's property section of the Code of Civil Procedure, but instead ruled that the property had to be turned over. The court does not state in its order, and there was no transcript, whether it ruled against the court's non-substance of their adverse claim on papers. But if it did, it ruled erroneously since the bank did not meet their burden of proof. It didn't show that it could never have a claim. Or, if one were to assume the court didn't actually rule on a substance, but just ignored the transatlantic claim, then the court feared it was skipping the term before process. It's skipping to the term of order without postponing it to have an adverse claim process. This court here is the matter to know about. It's an issue that's going to make its own determination. In my opinion, the Torrance's request could correct the post-judgment court's error. The Torrance's are requesting today that this court reverse the lower court, specifically ordering that the circuit court's order of April 16, 2018, granting the term of order be vacated. Then requesting that the circuit court be directed to set a time for respondents to file their adverse claim formally and to set forth their possessory statutory lien, and for the circuit court to hear the claim on its merits, so that that can be disposed of properly before there's any term of oath request. Additionally, we ask that the court direct the circuit court not to conclude its ruling on the term of promotion until after it has completed the hearing on the Torrance's lien claim determined by the trial-right-appropriate adverse claim process. Unless the court has any other questions, I'd be happy to rest at this moment. Thank you. Okay, thank you. Mr. Haskin. If you may proceed. May it please the court, counsel, Benjamin Haskin on behalf of William Wentz. First, the circuit court of Will County's April 16, 2018 order granting first merits motion for term of order of the Kitty Lynch-Ramegans respondent should be affirmed in two principal reasons. The circuit court could not adjudicate an adverse claim based on a storage lien, which could have been, but was not filed by respondents. Second, the facts of this case simply make it impossible for respondents to ever establish a valid storage lien. Turning to the first issue, which is a principal issue on appeal here, if respondents had notice and opportunity to assert an adverse claim based on their storage lien, but they simply did not do so, and that is their own doing, and that is binding. Well, we, you know, as counsel argued, why would you go to the trouble if you don't know somebody's going to try and come and take it from you, and keep the asset, you know, and try and either keep it long enough that it becomes yours by adverse possession, or, you know, work something out another time with the actual debtor. Sir, I think there are two problems with that argument. The first is, by the time a citation to discover asset was served on respondents, First Merit had already seeked and obtained two turnover orders for the Kitty Lynn train. They let them serve the citation to discover assets upon respondents specifically geared to the Kitty Lynn train, meaning the rider asked for documents substantiating any interest in the Kitty Lynn train. Now, surely a judgment creditor doesn't issue a citation to discover assets for no reason, and certainly a judgment creditor doesn't take a citation examination for no reason to claim that they were unaware that First Merit wanted to seek possession of the Kitty Lynn train. It simply requires them to put their head in the sand and ignore the extensive record of First Merit's supplementary proceedings that have been going on since the judgment of 2010. Against? The judgment debtor. Right. Mr. McHenry. Would the Torrences, I mean, would they have had knowledge of the previous two turnover orders? I know they had knowledge of the citation to discover assets because that's how Mr. Torrence was questioned as a result. Would they have known? They participated in supplementary proceedings through an attorney. I think an attorney is obligated to review the record. But turning back to your first question about contention, there's a more specific point there is that any doubt about what First Merit's contention was, was unquestionably resolved when they filed a motion to turn over seeking possession of the Kitty Lynn train. That was the time when respondents were obligated to, if any time, that was the time to assert their adverse claim. But they didn't do so. That was the time when they should have sought me to actually file their adverse claim so the circuit court could adjudicate the adverse claim contemporaneously and on parallel tracks with the motion for turnover. But they simply objected to the motion for turnover, or they simply filed their response saying they should be granted the opportunity. But that's not an affirmative request from the circuit court. They didn't ask the court for the opportunity to file the adverse claim. That would have been the proper mechanism. Instead, they just filed a response to the motion for turnover saying they should be granted an opportunity. But if they wanted an opportunity, it was incumbent upon them to ask the court to do so. Just objecting in the response brief doesn't allow the court to grant them relief in any way. Response brief? Their response to First Merit's motion for turnover was the time when they informed the circuit court that they should be allowed the opportunity. So that was their response. How did their response get before the court? Was it a brief? Yeah, it was a brief, Your Honor. They had an attorney who had been appearing in the supplemental proceedings for two years. He was, well, they had an attorney who was involved at the time the motion for turnover was filed. They sought an extension of time, then got new counsel. So counsel had been involved the whole time, but there was such new counsel. That counsel was involved in the briefing. That counsel then filed a response brief to the motion for turnover claiming they would like the opportunity, that they should be granted an opportunity to file. Should be granted an opportunity? I don't even think they used the word granted. They just said that it's premature. They didn't ask for the opportunity. They just argued that it's premature. Had they asked for the opportunity, I think this proceeding would be much different. And had they sought leave to file an adverse claim, the circumstances here and the circumstances below would have been much different. But they never did that. Instead, they filed a response brief, and then they participated in the hearing on the motion for turnover without ever asking to file an adverse claim and without ever filing an adverse claim. Did they object in that hearing? There's no transcript of the proceedings, and I personally wasn't involved. So, you know, there's no basis to say they did or did not object, but they certainly participated and attended and argued. Counsel's reliance on Section 1402, the Code of Civil Procedure, to claim that the law requires either the Circuit Court or First Merit to seek leave to file an adverse claim on their behalf is simply not supported by the plain wording of that statute. What Section 1402 requires is that if a judgment corrector, such as First Merit, comes aware that a party has an interest in property subject to turnover, that they permit or require that party to appear. That was satisfied in this case. First Merit obtained the first and second motion for turnover in January of 2015, at which time they were then advised that respondents had an interest in the trade. They then required respondents to come to the court by siding, by serving, the citation as a cover asset, which required respondents to appear on the court and which granted the court jurisdiction over respondents. Once notice and the opportunity to appear happens, it is incumbent upon that party to assert their right. It is not for the court of First Merit to say you have an adverse claim. It is for that party to prosecute that adverse claim. They can simply claim to be an adverse claimant, but no one is an adverse claimant until you have to file an adverse claim. They have an attorney, an attorney who is aware of his client's alleged belief and it is incumbent upon them to take some action to foreclose on that claim and assert it. The failure to assert that claim makes the analogy to some adjustment proceedings somewhat confusing. Because what the respondents are trying to say is by filing the motion for turnover, First Merit Bank had the burden to disprove their storage lien in the same way it offended his civil proceeding has the burden to disprove the merits of a plaintiff's complaint. The problem with that argument is First Merit couldn't disprove a claim that had not been filed. There's no facts to dispute, there's no elements to contest. If it was not filed, it's impossible for our party to disprove a pleading that didn't exist. Without the filing of an adverse claim, the motion for turnover was relatively straightforward. The two prima facie elements were met. And that is, is the property subject to turnover? And does the third party hold that asset? Each of these was a very easy yes. There's really no dispute that the train was subject to turnover if not examined. Dating back to 2011, the judge and creditor, sorry, the debtor, McNary, disclosed the train as a non-empty asset. And in 2012, he agreed to turn it over and agreed to go into stipulation. So that argument is satisfied. And the second argument of whether respondents were holding possession of the train is also undisputed. They don't claim to be the owner. They just claim to be the lien holder of a lien that was never filed. By not filing the lien and not prosecuting the adverse claim, there are no facts in disputes, there's no evidentiary hearing required. Well, I mean, one of the facts that would be in dispute would be when they filed their responsive motion, or the claim to your motion for turnover, is they said, you know, that we do have a right to a portion of this property or something in lieu of that property. And doesn't that satisfy at least the objection that they make to the turnover saying that you don't have the only right to the property? Well, Judge, there are two problems with that in that the first is they didn't actually claim they have a storage lien in their response brief. And, you know, one of the other options they could have done, instead of filing an adverse claim at that time, which I think they should have, would be to try to substantiate their adverse claim in their response brief. They could say, we do have a storage lien, and here's all the reasons why. Here's proof of a contract or consent with the owner that gives right to our storage lien. But they didn't do that either. All they said is this motion for turnover is premature because we should first be granted the opportunity to assert the storage lien. That itself is not sufficient. And the other problem is they have to make an affirmative request upon the court to do something. That is by filing a motion that allows the court the opportunity to grant them relief. They didn't do that either. They simply said we should be granted the opportunity, and let's do that. Do you have to get leave of court? Sorry, Judge, I didn't hear that. Do you have to get leave of court to file? I don't know if it's required. They certainly could have filed an adverse claim. It's probably the safest course of doe. But when you say you should be granted something, that's usually implying you must have leave of court to do something. Sure. The statute doesn't- I mean, look at preface of relief. It's kind of basic stuff, you know. The statute doesn't require basic practice. I always see a party asking for leave to file an adverse claim. I think that's the common practice in supplementary proceedings. Why under the statute is that required? Where in the statute is that required? It is not statutorily required to seek leave. And it may have been very proper for them to just file the adverse claim. You would think. Is that what the statute permits you to do, file a claim? Yes, absolutely. Then why do you go to court and seek leave to do it? I don't think you have to, Judge. I think it's providing notice to the judge that you're doing so. More common courtesy to explain- That's the circuit clerk's job. That something's been filed. Sure. But, you know, whether they sought leave or not, they have the obligation to file the adverse claim.  when the motion for turnover is filed, that was their last opportunity to file an adverse claim, and they didn't do it. So, yeah, but your argument is based, is that response brief was not the filing of an adverse claim. Yes. And there's no obligation to seek leave of court to do it. That's correct. Okay. What's your argument? The argument is that they didn't do anything in the response brief. Correct. They just objected to timing this emotional turnover, and that itself is not enough to prevent the turnover order. By never filing the adverse claim, it was impossible for the court to grant them any relief on their adverse claim. I have a very silly question, but on page C2024, this is in Appellant's appendix, it's called Exhibit B, that says Mr. McElyerry represents there is a storage fee due. It doesn't say lien. It says fee. So how does one get a storage lien? Well, Judge, the document you're referring to, it's an order dated January 14th, 2015. Okay, yes. And I presume this is what your opponent was referring to when she said there was a lien. Yes. How does one acquire a lien? So he notified the court that there's fees due. Gentleman's agreement, maybe quantum merit. It doesn't say there's a contractual obligation. So how does one get a storage lien? Well, Judge, I'm glad you've asked that. That goes into our second point, which is it is impossible for respondents in this case to prove the existence of a storage lien because under the Storage Lien Act, the lien requires consent of an owner. So you have to have a contract with the owner of the property to store a cost. And it is impossible to prove that for two reasons. The first is that you can't, the fund are unable as a matter of law to prove any contract with McElyerry. He died in 2015, and there is no evidence, I'm sorry, it is understood that there's no writing. There is no contract. We know that because the bank serves citation discovered assets, which with a writer asking for any contract or any writing substantiating a lien is nothing but a turnover. And James Torrance, who is really the one with the lien because he possesses it, he firmly disclosed his answer, there's no writings. So if there's no writings, any lien would have to be substantiated through an oral agreement. But the Deadman Act will bar any testimony of what may have been engaged in a conversation between either respondents and McElyerry. So if you're unable to prove a written, if there's unable to prove a written contract, there is no written contract, and you're unable to prove an oral contract, then it's just impossible to ever prove a storage lien. Is it the finding that's included in this order, an admission of the existence of that lien, of the agreement? Certainly not. I think it certainly acknowledges that respondents are claiming some right in it, but whether there's a lien or not is a legal question. Well, it's a court order signed by the judge. They can be able to take notice of that and introduce that and offer it to the court for proof that the owner of the property, Mr. McElyerry, owed them money because there's a finding signed by a judge that there was a fee due to them. That's possible, Judge. That certainly wasn't argued. That's a point we've not argued in the briefs when it's at the court. I'd have to look at the precise wording of the order and whether that proves elements of a contract. The second problem with this is that at the time the property was moved, which was June 2012, McElyerry was in the process of bankruptcy. Bankruptcy had been filed in 2011. We know it was at least pending about 2013 for Ben Solomon from the Bankruptcy Court to proceed on his motion for the turnover. And by virtue of the existence of bankruptcy, McElyerry, the Judge McElyerry, didn't have capacity to enter into a contract for the Keyland train because he was not the owner. The filing of bankruptcy caused all his assets, including the Keyland train, to be turned over to the Bankruptcy State. At that point, the bankruptcy trustee is the party to have legal capacity to determine how to dispose of his assets. And there's certainly no credible claimant or correspondence in any communication with the trustee in order to arrive at a contract to restore the Keyland train. And in fact, McElyerry's transfer of the Keyland train behind the back of the trustee is really a violation of bankruptcy code and it's a fundamental fraudulent transfer or invalid transfer by taking an asset that belonged to the state and without proper permission giving it to a third party for the specific purpose of hindering the creditors. One of the respondents who replied to that is that McElyerry had an obligation to prevent the dissipation of his assets. But the problems with that argument is, first of all, it seems quite unclear how a multiplied train can be dissipated. It's a component of a train, an engine, it tracks. Dissipation of assets applies to money, raw material, or raw goods. It's almost impossible for a train to be dissipated. Unless it was lost somewhere unprotected where it could be vandalized or damaged somehow. In which case, protection might be to store it so that it isn't dumped somehow. That's a good point. At the time, it was on McElyerry's property. Everyone knew it was there. And a year later, when the First AmeriCorps went to get a turnover of that, that's where it was presumed to be. It was only in 2015, when they got the turnover order, that they were advised that it had been taken away from McElyerry's property and moved to respondents. Had it not been moved, it would have simply still been on McElyerry's property. At that point, he was still living, obviously. At that point, it would have been turned over to First AmeriCorps Bank before the transfer to respondents. Which was fraudulent. Yes, Judge. If there are no further questions, I'll briefly conclude. You may. The Circuit Court of Will County's order granting First AmeriCorps bank's motion for turnover of the Caterlin train should be affirmed because First AmeriCorps established a pre-reflection case for turnover and because the Circuit Court could not adjudicate a lien that could have been, but was not filed anyway. Thank you, Mr. Hester. Ms. Johnson. Thank you. Just a few points I'd like to touch on. The first point I'd like to touch on is one of the last ones counsel addressed. There was a foreclosure pending on Mr. McElyerry's property. It's in the record at the time that Torrance was requested by him to move the property to their property. Had he left the Caterlin train on that property, he wouldn't have done his duty as a debtor in bankruptcy, which is to help the estate protect the assets. And at that point, by having it moved off of the property that was about to be foreclosed, where it would presumably be taken by whoever the foreclosure buyer was, he did have the duty, therefore, to move this property. It wasn't that the bankruptcy prevented it. In fact, he would have been violating his duty as a debtor to let it go forward and not protect it. Counsel mentioned earlier... Well, whose property was it at that time? Whose real estate was it? No, whose property was the train? The train was Mr. McElyerry's personal property at the time that it was moved. It was. It wasn't trustee in bankruptcy's property. I'm sorry. I take it back. It would have been not trustee, actually. It's the estate in bankruptcy. It's technically property of the estate. But a debtor in bankruptcy does have a duty to make sure property isn't dissipated, destroyed, if the trustee has not requested turnover of it yet. As long as it's in the estate, the trustee may request turnover at any time. It could be two years later. The debtor can't just let it be dissipated. If they want to seek abandonment and say the trustee doesn't want this property, they can file a motion to seek abandonment. The bankruptcy court said it has no value to the bankruptcy. Let me take it back. And then I can do whatever I want with it. I can leave it on the property. I can let it be out in the rain. I can let someone steal it. It doesn't matter. One says the debtor has asked it to be abandoned. So that wasn't the situation here. The situation is... Well, that, in effect, allows him possession of the property on abandonment action. It allows him possession... But we didn't have that here. Right. We didn't have that here. Okay. So possession at that time... Who has possession when it's a bankrupt estate? The legal possession... Legal ownership is by the estate. Possession... So it's an ownership-possession issue. Ownership is the estate. Possession is the debtor. Still in the debtor's possession. So the debtor... But there's no authority in the debtor to mess with those assets except some type of dissipation or argument that could be made by the trustee. Right. The duty is that the debtor is not supposed to allow the assets to be dissipated. Not allow them to be destroyed in any way. Supposed to generally protect them. But the trustee also has a duty to gather and protect assets. Absolutely. It's a co-joint duty at best. It is. That is accurate. Okay. It is accurate. I have some more silly questions. Sure. On January 14th, 2015, there is this note referring to the fee. Yes. And then in your response, in March of 2018, I presume the train was in storage with your clients from 15 to 18? Actually, from the date it was moved, which I think was... I don't have my notes from my opening argument, but at least from 15, but I think it was 12. All right. So I'm assuming they weren't paid during that period of time. They hadn't taken any action in those three years or five years to enforce a storage lien. So why would the court be... I guess let me just make those facts known to you and how would that affect your argument? I don't think it does affect my argument. Mr. McHenry had indicated, and this is in the transcript of Mr. Torrance's petition examination, full transcript attached to the library, in their opening motion, but he indicated that his brother had been told that Torrance's would be paid, that he had financial difficulties at the time. Obviously, being in bankruptcy, he had financial difficulties. This was someone that they knew who had asked them to store it at their premises, and so they stored things for him, for other people. They felt they would be paid. They didn't feel they needed to enforce their storage lien. When they realized that they needed to enforce their storage lien was when the bank asked for turnover of those assets, and that's when they did so. I'm not sure if that answers your question. It does, it does. And counsel argued that there was... that the Torrances could have, in these three years while they were waiting for the bank to decide what they were going to do, have done something. And it says, you know, the bank has issued a citation for no reason. Well, apparently for no reason the bank waited three years before deciding if it was going to take a turnover action or not. So I don't think it is incumbent upon the Torrances to come out and say, listen, I really need to file my lien here because I'm really worried something's going to happen. The bank obviously wasn't in a gigantic hurry. They didn't need to seek leave. They could have just filed something. On the other hand, the statute says that once the court is aware, the court is to grant a hearing. They pointed out to the court, listen, now you're aware. This is premature. You need to grant a hearing. You need to grant leave. Thank you. One thing I do want to bring up is you're not hearing from the bank today, interestingly enough. You're hearing from Mr. Wendt. I raised in my brief that Mr. Wendt doesn't have any standing according to the record in this case. He claims he was a buyer at an auction. The auction occurred after the record closed in this case. The auction is actually subject to another appeal before this court under case number 318-0584, a patterns briefing which is completed. The reason it's on briefing is because the claim is that Mr. Wendt submitted an illegal bid in a closed bid auction. He submitted an ax over type of bid. It's not an issue here, but the reason I raised this is because I don't think Mr. Wendt has any standing to actually talk to or write to you. I did raise this in our reply brief when I realized he was going to be filing a reply brief. The bank isn't here trying to protect their turnover order and their emotions. They just are letting the bank do it for them. They're letting Mr. Wendt do it for them. There was no substitution requested below. There's no substitution requested in this appeal. There's nothing showing that they are a proper surrogate somehow of the bank to make the arguments. Also, Mr. Wendt does clarify that this appeal is moot because now he's now the undisputed owner of the property. That's not before the record. In fact, the other appeal shows that it's not undisputed. The appeal is not mooted by his elect ownership because the lender is a possessor of the lien. Finally, I would just like to say that there is case law, and I cited it in my brief, I won't go on, but the B.J. Lind case versus Deku talks about the bailiff's judgment on turnover cannot be entered in favor of a judgment creditor. In fact, it's error to enter the turnover without notice of the person who's interested in the property, known to the court, to be putting their rights out. The procedures are that they have to have not only notice, but they have to have a right to fully present their claim and maintain their rights, and that was not included. If there's no other questions, I would thank the court today. Thank you. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued as soon as possible.